172 P.2d 588

### STATE v. WALKER.

No. 4960.

Supreme Court of New Mexico.

Sept. 14, 1946.

Otto Smith and Robert V. Wollard, both of Clovis, for appellant.

C. C. McCulloh, Atty. Gen., and Robert W. Ward, Asst. Atty. Gen., for appellee.

BICKLEY, Justice.

A criminal information was filed in the district court charging Aubrey Walker with the murder of his wife, Martha Walker. His defense was that he did not know the gun was loaded and that it went off accidently. A jury returned a verdict against him of voluntary manslaughter. A motion for new trial was filed and overruled. The sentence of the court was that the defendant be imprisoned for a term of not less than seven years and not more then ten years, and that he pay the costs of the prosecution. Seeking to reverse this judgment, defendant has appealed and has filed a supersedeas bond.

The details of the occurrence are reflected in the summaries of the testimony of the State's witnesses Phillips and Tharp, prepared by counsel for the State and accepted as correct by counsel for defendant.

"Witness Phillips testified:

" 'He (defendant) said she had thrown something at him; that they had quarrelled and they had been drinking some. He said he went over to the desk . . . let me see . . . he wanted to see how many war bonds he had because he was thinking of cashing some to make some improvements on his place. He said he saw the gun in the drawer with the bonds and he picked it up.

He said he thought he would frighten her. He said he didn't point the gun at her and knew it was not loaded.'

"Mr. Tharp Testified:

" 'The first he (defendant) said was, "We had a fuss and we were drinking and we always fussed when we drank. We didn't fuss any other time." * * * He said during the time they were fussing his wife threw a match case at him. I believe those are the words he used. * * * He said then he went to the desk, after the match case was thrown * * * he never did specifically say the time * * * but he went to the desk and went to the drawer in the desk to get some bonds he calculated on selling—cashing out, and that the gun was in the same drawer with the bonds. He picked it up to scare her and didn't think it was loaded. He never did say he pulled the trigger. He said he pointed it to scare her.' "

It is the admission of this testimony as to what defendant said at the coroner's inquest that is the basis of defendant's single assignment of error as follows:

"The court erred in permitting evidence of statements made by the defendant before the coroner's jury to be introduced at the trial of this case."

More specifically, defendant's counsel complains that the statements (a) were not freely and voluntarily made; (b) they were

made while the defendant was in a stupor; (c) he was not advised of his rights and (d) he was not given an opportunity to consult counsel.

■ We agree with the statement of the Missouri Supreme Court made in State v. Young, 119 Mo. 495, 24 S.W. 1038, 1045, quoted by counsel for appellant:

"The great question, after all, is, was the statement voluntary? and it must be determined from the facts in each case."

We indicated in State v. Archuleta, 29 N. M. 25, 217 P. 619, that a voluntary statement was not rendered inadmissible merely because the party making the statement was under arrest, and was not warned of the effect of the statement. And see People v. Chan Chaun, 41 Cal.App. 586, 107 P.2d 455, 457, where it was said:

"It is better and safer practice to inform an accused that his replies may be used against him, but if the statements are not made under oath, or under conditions requiring such a warning, the failure to specifically so instruct an accused does not affect the admissibility of the statement as evidence."

■ And in State v. Dena, 28 N.M. 479, 214 P. 583, the principles of exclusion applicable to confessions are discussed and New Mexico cases cited, and it was decided that where confessions are freely and voluntarily made, without duress, coercion, hope, fear, and without promise of reward or immunity, even though while accused is under arrest and before advice of counsel is obtained, are admissible in evidence. So it seems that defendant's specific objections (c) and (d) are without merit.

We may also say in passing, for what it is worth, that defendant did not request that the question of whether the statements were voluntary be submitted to the jury, doubtless because the defendant did not produce any evidence in conflict with the prima facie showing of voluntariness made by the State. See State v. Anderson, 24 N.M. 360, 174 P. 215. The facts apearing from the record do not persuade us that the defendant was in a stupor or was not in full possession of his faculties when the statements were made. No specific objection of that sort was made when the testimony was offered but we have reviewed the record nevertheless.

After carefully considering the record and briefs of counsel for defendant, we do not find merit in the contention that the statements of the defendant at the coroner's inquest were not free and voluntary.

We have referred to the principles of exclusion applicable to confessions. It is held in California that admissions not amounting to confessions are not controlled by the stricter rules applying to confessions. In People v. Durazo, 31 Cal.App.2d 559, 88 P. 2d 218, it was decided:

"Voluntary statements of accused containing damaging admissions but not constituting confession of guilt were properly admitted without preliminary proof that admissions were voluntarily made where accused had full opportunity to show that statements were involuntary."

See also People v. Chan Chaun, supra.

■ Whether the California doctrine is correct or not, we need not now decide. But where the statements made by a participant in an occurrence is to a considerable extent exculpatory, this may be a circumstance to consider as tending to support the view that the statements were voluntarily made. Statements in the main exculpatory, are frequently made with some eagerness and with an absence of reluctance.

■ Furthermore, defendant himself, either on direct or proper cross-examination, when he took the stand in his own defense, testified in substantial effect to the matters related by the witnesses Phillips and Tnarp, who detailed the defendant's statements made at the coroner's inquest. Under such circumstances, even if otherwise erroneous, though we think in fact it was not, the admission in evidence of the testimony complained of does not constitute prejudicial error. See Honda v. People, 1943, 111 Colo. 279, 141 P.2d 178; State v. Talamante, 50 N.M. 6, 165 P.2d 812.

■ Finally, it may be well to refer to the principle governing review of such questions.

In 24 C.J.S., Criminal Law, § 1869, it is said:

"Rulings of the trial court on the competency of witnesses will not be disturbed in the absence of abuse of discretion. * * *

"Similarly, it is peculiarly the province of the trial, as distinguished from the appellate, court to pass on the preliminary proofs essential to the admission of certain kinds of evidence, such as evidence received in prior proceedings, dying declarations, and secondary evidence generally, confessions, etc."

Among the numerous cases cited in support of the text is State v. Di Stefano, Mo., 1941, 152 S.W.2d 20, where it was decided:

"Where defendant objects to the admission of confession on the ground that it was involuntary, unless manifest error has been committed, appellate court will defer to trial court's ruling in view of its better opportunity to arrive at the truth."

From all of the foregoing, it appears that the judgment must be affirmed.

And it is so ordered.

SADLER, C. J., and BRICE, LUJAN, and HUDSPETH, JJ., concur.